UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

T&T MANAGEMENT, INC.,

      Plaintiff,

v.

CITY OF DETROIT,

      Defendant.

_____/

Case No. 21-10900

HON. MARK A. GOLDSMITH

### OPINION & ORDER
### GRANTING DEFENDANT'S MOTION TO DISMISS (Dkt. 5)

This matter is before the Court on Defendant City of Detroit's motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 5). For the reasons stated below, the Court grants the motion.[1]

### I. BACKGROUND

Plaintiff T&T Management (T&T) brings this action against Defendant the City of Detroit in connection with real property adjacent to Detroit City Airport. Compl. (Dkt. 1). In 1997, Merkur Steel Supply, Inc. (T&T's predecessor entity) became the tenant of the property under a written lease with HRT Enterprises. Id. ¶ 8. The lease contained an initial term of five years and two five-year option periods, for a total term that lasted until 2012. Id. In 1999, Merkur sued the City in Michigan's Wayne County Circuit Court, alleging that the City had inversely condemned Merkur's property rights as the tenant of the property. Id. ¶ 6. In 2002, a jury found that the City had partially inversely condemned Merkur's property rights by preventing Merkur from using the

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes T&T's response to the motion to dismiss (Dkt. 6), the City's reply (Dkt. 8), the City's supplemental brief (Dkt. 10), and T&T's response to the City's supplemental brief (Dkt. 11).

vacant land to expand its business. Id. ¶ 6. The Michigan state court entered a final judgment that obligated the City to pay Merkur $3,800 per month as just compensation for its future damages. Id. Under the judgment, the City must continue the payments until one of three events occurs: (i) Merkur ceases to lease the property; (ii) the City acquires ownership of the property; or (iii) the City lifts certain building restrictions that prevent construction of a building on the vacant five-acre parcel. Id.; Final J. at PageID.29–31 (Dkt. 1).[2]

On June 23, 2017, the City notified Merkur that, as of that day, it had terminated the $3,800 monthly payments due under the final judgment because it concluded that Merkur had ceased to lease the property. 6/23/17 Letter at PageID.61 (Dkt. 1). Merkur filed a motion in the state court to enforce the judgment and to require the City to make monthly payments from July 2017 to the present. Compl. ¶ 44; Mot. to Enforce J. at PageID.63–66 (Dkt. 1). After oral argument, the state court denied the motion based on its determination that Merkur had ceased to lease the property and that, therefore, under the judgment, the City was no longer required to make monthly payments. Compl. ¶ 45.

Merkur then filed a motion for reconsideration in which it argued that the court made the factual finding that there was no lease without any testimony from the parties and without application of the law based on any findings. Mot. for Reconsideration ¶ 12 at PageID.96–99 (Dkt. 1). It also contended that the court's ruling was clearly erroneous because the lease between Merkur and HRT Enterprises contained a provision that if Merkur became a holdover tenant, the lease would continue on a month-to-month basis. Id. ¶ 13. And it stated that T&T continued to

---

[2] The final judgment, letter regarding monthly payments, motion to enforce the judgment, motion for reconsideration, and orders from the Michigan Court of Appeals and the Michigan Supreme Court (all cited below) are referenced in and attached to the complaint. Accordingly, the Court may consider them on the motion to dismiss. Com. Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007) ("[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss.").

lease the property based on the possibility that the City would eventually remove the restrictions on the property. Id. ¶ 14. The state court denied the motion for reconsideration. Compl. ¶ 47.

Merkur filed an application for leave to appeal in the Michigan Court of Appeals, which denied the application for lack of merit in the grounds presented. Id. ¶ 48; Mich. Ct. App. 7/22/20 Order at PageID.122 (Dkt. 1). Merkur appealed the order of the Michigan Court of Appeals to the Michigan Supreme Court, which denied review because it was "not persuaded that the question presented should be reviewed by this Court." Compl. ¶ 48; Mich. Supreme Ct. 12/22/20 Order at PageID.124 (Dkt. 1).

Having succeeded by way of a corporate merger to Merkur's rights under the final judgment, Compl. ¶¶ 9–10, T&T brought this action, asserting a procedural due process claim and a Fifth Amendment claim. The procedural due process claim is based on two grounds. First, T&T alleges that it was denied procedural due process when the City terminated monthly payments without notice and an opportunity to be heard and without a court's permission. Id. ¶¶ 52–53. Second, T&T alleges that it was again denied procedural due process when (i) the Wayne County Circuit Court found that Merkur's lease had been terminated without holding an evidentiary hearing or trial and without making any application of the law based on factual findings, and (ii) the Michigan Court of Appeals and Michigan Supreme Court denied review. Id. ¶¶ 46, 55. T&T also brings a Fifth Amendment claim, alleging that the City's termination of payments and the "judicial endorsement thereof" constituted a taking of T&T's property without just compensation. Id. ¶ 63.

T&T seeks (i) a judgment determining that the City has deprived T&T of its due process rights; (ii) an injunction to prohibit the City from terminating monthly payments under the final judgment unless one of the three conditions is met; (iii) an order to enforce the final judgment and require the City to make payments under the final judgment from July 2017 to the present; (iv) other appropriate relief; and (v) costs and attorney fees. Id. ¶¶ 58, 65.

The City filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 5). T&T filed a response (Dkt. 6), and the City filed a reply (Dkt. 8). Without seeking leave of the Court, the City also filed supplemental authority in support of the motion (Dkt. 10), to which T&T responded (Dkt. 11).

## II. ANALYSIS[3]

The City argues that T&T's claims should be dismissed for several reasons. First, it contends that neither the 2002 judgment nor any law entitled T&T to notice and an opportunity to be heard on whether Merkur's lease had ended or required the City to seek judicial permission to stop making payments once it determined the lease had ended. Mot. at 6; Reply at 6. Second, it asserts that the Rooker-Feldman doctrine bars T&T's claim alleging that the state court denied T&T due process and committed an unconstitutional taking when the state court determined that the lease had ended and, therefore, denied the motion to enforce the final judgment. Mot. at 10–11; Supp. Authority at 2–3. Third, it states that T&T's takings claim based on the City's termination of payments is barred by Michigan's doctrine of collateral estoppel. Mot. at 7–10; Reply at 1–3. The Court addresses each argument in turn.[4]

### A. Procedural Due Process Claim Based on the City's Actions

To state a procedural due process claim, a plaintiff must first identify a protected liberty or property interest of which he or she was deprived. Bd. of Regents of State Colls. v. Roth, 408 U.S.

---

[3] To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. Id.

[4] Because the Court dismisses T&T's claims on other grounds, it does not address the City's argument that the takings claim is barred by the three-year statute of limitations that applies to 42 U.S.C. § 1983 actions or the argument that T&T has not adequately alleged a judicial taking.

564, 570–571 (1972). If such a protectible interest is identified, a court will then "examine[] whether the procedures attendant upon that deprivation were constitutionally sufficient." Pusey v. City of Youngstown, 11 F.3d 652, 656 (6th Cir. 1993) (punctuation modified).

T&T alleges that it was deprived of its property rights when the City immediately and unilaterally terminated the monthly payments due under the final judgment, without first providing notice and an opportunity to be heard or without seeking a court's permission. Compl. ¶ 53.

While T&T may have had a protectible property interest in the continuation of the monthly payments, it has failed to demonstrate that any process was owed to it prior to termination by the City. There is no process set out in the judgment for termination of payments owed to T&T. The judgment does not require the City to provide notice that it was contemplating terminating payments or to provide T&T an opportunity to be heard before it terminated payments. It also does not require that the City, before implementing its decision that it was no longer obligated to make payments, seek a court ruling. And T&T does not point to any authority holding that the City's failure to either provide notice and an opportunity to be heard or to seek a court ruling prior to stopping payments constitutes a due process violation. This is not surprising, given the availability of the state court to resolve any disagreement about the City's continuing payment obligations—which is precisely the process that took place here. T&T fails to demonstrate how these circumstances raise a constitutional concern.

Therefore, the City is entitled to dismissal of T&T's due process claim to the extent the claim is premised on the City's actions.

> **B. Procedural Due Process Claim Based on the Michigan Courts' Actions and Judicial Takings Claim**

T&T alleges that it was denied procedural due process when (i) the Wayne County Circuit Court "made a finding of fact that there was no longer a lease in effect for the Property without holding any evidentiary hearing or trial," and (ii) the Michigan Court of Appeals and the Michigan

5

Supreme Court "refused to hear the case." Compl. ¶ 55. It also alleges that the Wayne County Circuit Court's ruling that the City was no longer required to make monthly payments was an unconstitutional taking. Id. ¶ 63. The City contends that the Rooker-Feldman doctrine bars federal jurisdiction of these claims because their source of injury is a state-court ruling. Mot. at 10–11; Reply at 6–7; Supp. Authority 2–3. The Court first discusses the procedural due process claim and then discusses the judicial takings claim.

1. **Procedural Due Process Claim Based on the Michigan Courts' Actions**

"The Rooker–Feldman doctrine embodies the notion that appellate review of state court decisions and the validity of state judicial proceedings is limited to the Supreme Court under 28 U.S.C. § 1257, and thus that federal district courts lack jurisdiction to review such matters." In re Cook, 551 F.3d 542, 548 (6th Cir. 2009); see also D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). The United States Supreme Court has stated that the doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The United States Court of Appeals for the Sixth Circuit has explained that, to determine whether the Rooker-Feldman doctrine applies, courts must look to the "source of the injury the plaintiff alleges in the federal complaint," McCormick v. Braverman, 451 F.3d 382, 393 (6th Cir. 2006) and "consider what relief the plaintiff requests," RLR Invs., LLC v. City of Pigeon Forge, Tenn., 4 F.4th 380, 388 (6th Cir. 2021). If the source of the plaintiff's injury is the state-court judgment, then the Rooker-Feldman doctrine bars the claim. McCormick, 451 F.3d at 393; RLR Invs., 4 F.4th at 388 (explaining that "the test is whether the plaintiff's injury stems from the state-court judgment, not whether the claims [asserted in state and federal court] are identical"). "If

6

there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim," and the district court has jurisdiction over the claim. McCormick, 451 F.3d at 393. "A court cannot determine the source of the injury without reference to [the plaintiff's] request for relief." Berry v. Schmitt, 688 F.3d 290, 299 (6th Cir. 2012) (punctuation modified).

The relief that T&T seeks indicates that the source of its injury is the result of the state-court proceedings itself—that is, the judicial determination that one of the conditions in the final judgment had obtained, thereby relieving the City of its obligation to make payments, and the subsequent judicial determination that the issues presented did not merit appellate review. T&T seeks a judgment determining that the City has deprived T&T of its due process rights, an injunction prohibiting the City from terminating monthly payments under the final judgment unless one of the three specified conditions is met, and an order to enforce the final judgment and require the City to make monthly payments from July 2017 to the present.

But the state court already determined that the City was no longer required to make payments because one of the conditions in the judgment occurred—Merkur had ceased to lease the property. On that basis, it denied the motion to enforce the judgment. In fact, T&T sought twice in state court the same form of injunctive relief that it now seeks, see Mot. to Enforce J. ¶ 12; Mot. for Reconsideration ¶ 15, and the state court denied it. The injunctive relief and the order to enforce the final judgment that T&T seeks would contravene the state court's decision.

The fact that a plaintiff's requested relief requires the district court to disturb a state-court judgment indicates that the plaintiff's source of injury is the state-court judgment itself. Hall v. Callahan, 727 F.3d 450, 454 (6th Cir. 2013); see also Russell v. Brown, No. 3:20-CV-811-CHB, 2021 WL 4492857, at *4 (W.D. Ky. Sept. 30, 2021) (finding that "the Court's inability to grant [the plaintiff's] relief without directly affecting the state-court order demonstrates that [the plaintiff's] source of injury is not merely related to the state-court proceedings, but her source of

7

injury is the state-court order itself that resulted from those proceedings"). In addition, "claims seeking injunctive relief are barred by Rooker–Feldman if they necessarily require the federal court to determine that a state court judgment was erroneously entered." Lawrence v. Welch, 531 F.3d 364, 371 (6th Cir. 2008). Here, T&T's requested relief is entirely backward-looking and asks the Court to review and reject a state-court judgment.

In its response, T&T relies on two pre-Exxon cases, Smith v. Oakland Cnty. Cir. Ct., 344 F. Supp. 2d 1030, 1059 (E.D. Mich. 2004) and Catz v. Chalker, 142 F.3d 279, 293 (6th Cir. 1998), overruled on other grounds by Chevalier v. Estate of Barnhart, 803 F.3d 789 (6th Cir. 2015), to contend that the Sixth Circuit has recognized an exception to the Rooker-Feldman doctrine for challenges to state-court procedures. Resp. at 15–16. T&T argues that the doctrine is inapplicable because it is challenging the procedures adopted by the Michigan courts. Id. at 16–18.

However, "[t]here is no due process exemption to Rooker-Feldman." Russell, 2021 WL 4492857, at *2. Further, T&T "cannot evade Rooker-Feldman" by framing its source of injury "as due process violations." Id. (stating that while the plaintiff did not expressly ask the court to overturn a state-court order, "she seeks an end-around by asking this Court to review the state-court process . . . [b]ut the end result is the same"); see also Postma v. First Fed. Sav. & Loan of Sioux City, 74 F.3d 160, 162 n.3 (8th Cir. 1996) (noting that plaintiffs cannot seek reversal of a state-court judgment simply by casting their complaint in the form of a procedural due process violation). The determination of whether a claim is barred by Rooker-Feldman does not rest on a distinction between the procedures that a state court adopts and the substance of the judgment that a state court issues. Rather, as explained above, the Sixth Circuit has stated that the relevant inquiry post-Exxon for determining whether a plaintiff seeks review of a state-court judgment is the source of the injury the plaintiff alleges in the federal complaint and the requested relief. See RLR Invs., 4 F.4th at 388.

8

Confirming there is no carve-out under Rooker-Feldman for an attack on procedures, the Sixth Circuit has held that injuries stemming from the alleged procedural errors of a state-court judge "directly implicat[e] Rooker–Feldman concerns." Hall, 727 F.3d at 453; see also McCormick, 451 F.3d at 394. For example, in Hall, the plaintiffs alleged that a state-court judge violated their due process rights by sua sponte granting summary judgment against them without meeting with the litigants or setting a briefing schedule. 727 F.3d at 453. The court rejected the plaintiffs' argument that they asserted a claim that was independent of the state-court judgment because they had alleged that a third party—the state-court judge—injured them with her actions during the state-court proceeding. Id. at 454. The Hall court stated that "Judge Cross was not a third party, but the presiding judge," and "errors made by state court judges are barred from consideration." Id. (citing McCormick, 451 F.3d at 394). An exception to the Rooker-Feldman doctrine in which litigants could seek federal-court review of state-court decisions for procedural errors would undermine the purpose of the doctrine and disregard district courts' jurisdictional limits. As the Sixth Circuit has explained, "if this court construes Rooker–Feldman to allow attacks on a state court's procedural error, then federal courts could extensively review state court trial proceedings, a task belonging to state appellate courts." Id. at 454.

In harmony with this Sixth Circuit view, district courts within this circuit have found that "[t]he [Rooker-Feldman] doctrine prevents both a direct attack of the substance of a state-court decision and a challenge to the procedures used by the state court in arriving at its decision." Bowman v. Cortellessa, No. 3:15-cv-268-DJH, 2015 WL 4018426, at *2 (W.D. Ky. June 25, 2015); see also Haller v. Lipps, No. 1:11-cv-291, 2011 WL 7300284, at *5 (S.D. Ohio Dec. 28, 2011) (finding—in a case in which the plaintiff alleged in part that the judges presiding over his parentage complaint failed to conduct an evidentiary hearing to determine the best interest of the child—that, because "the injuries alleged all stem from the result of [the plaintiff's] state court proceedings and his

9

request for relief is predicated on a determination that the Judicial Defendants improperly adjudicated the matters," the claims against the judicial defendants were barred).

Here, T&T's claims—filed after its defeat in the state-court system—challenge the alleged errors of the state courts and, specifically, challenge matters consigned to the discretion of the state courts: the Wayne County Circuit Court's decision to decide the motion before it without holding an evidentiary hearing and the state appellate courts' decision not to grant to review. The Michigan Supreme Court has explained that Michigan trial courts enjoy "latitude . . . regarding motion practice and evidentiary hearings generally." People v. Franklin, 894 N.W.2d 561, 572 (Mich. 2017). Under Michigan law, Michigan trial courts "possess reasonable discretion regarding whether to hold hearings concerning the range of motions that typically come before them," and they are the ones "best suited to determine whether an evidentiary hearing on a given motion should be held." Id. at 571; see also Williams v. Williams, 542 N.W.2d 892, 895 (Mich. Ct. App. 1995) (stating that "the trial court itself is best equipped to decide whether the positions of the parties (as defined by the motion and response, as well as by the background of the litigation) mandate" an evidentiary hearing). And appellate review in the type of post-judgment context present here is discretionary. See Mich. Ct. R. 7.203(B); id. 7.303(B).

Even if the Rooker-Feldman doctrine did not preclude T&T's challenge to the procedures by which the Michigan court determined that an evidentiary hearing or trial was unnecessary, due process does not entitle T&T to an evidentiary hearing at the trial-court level or to review on the merits by the state appellate courts. "No single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 483 (1982). As the City notes, T&T offers no authority to support its claim that it was denied due process by the Michigan courts. See Reply at 3. It identifies no rule, law, or procedure

10

that the state courts violated by declining to hold an evidentiary hearing or to grant review on appeal.

Accordingly, the City is entitled to dismissal of T&T's due process claim to the extent the claim is premised on the Michigan state courts' actions.

### 2. Judicial Takings Claim

T&T's judicial takings claim is likewise premised on the state judge's allegedly incorrect legal ruling that the City was no longer required to make monthly payments as just compensation for future damages. The claim challenges the substance of that judicial ruling. Therefore, the source of alleged injury is the state-court judgment, and this claim is also precluded by Rooker-Feldman.

### C. Takings Claim Based on the City's Termination of Payments

T&T alleges that the City's unilateral termination of payments deprived T&T of its property rights without just compensation. Compl. ¶ 63. The City argues that Michigan's collateral estoppel law precludes this claim. Mot. at 7–10. The Court agrees. T&T's takings claim rests on a right that T&T had under the 2002 judgment, and it is based on the assertion that the City is still obligated to make payments. That issue has been litigated, and, therefore, collateral estoppel applies.

Issue preclusion, or collateral estoppel, prevents parties from "raising an argument that they already fully litigated in an earlier legal proceeding." Anderson v. City of Blue Ash, 798 F.3d 338, 350 (6th Cir. 2015). It bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (punctuation modified).

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give state-court judgments the same preclusive effect that the state would afford such judgments. Exxon Mobil,

11

544 U.S. at 293. Michigan law has three requirements for the application of collateral estoppel: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." Monat v. State Farm Ins. Co., 677 N.W.2d 843, 845–846 (Mich. 2004) (punctuation modified). Michigan law does not require mutuality if collateral estoppel is asserted defensively, as it is here. Id. at 852.

T&T asserts that it was denied consideration of the issue on the merits and denied process at the appellate level. Resp. at 12. However, as the state court's denial of T&T's motion to enforce the judgment indicates, T&T was not denied consideration of the issue on the merits. And the issue of whether a certain condition in the final judgment had obtained was actually litigated. Under Michigan law, an issue is actually litigated if it is "put in issue by the pleadings, submitted to the trier of fact for determination, and is thereafter determined." Latimer v. William Mueller & Son, Inc., 386 N.W.2d 618, 627 (Mich. Ct. App. 1986). An issue may be actually litigated without a trial. Id. The issue of whether the City's obligations under the judgment were still in effect was put at issue through T&T's motion to enforce the judgment, submitted to the state-court judge for determination, and thereafter determined after oral argument and, presumably, consideration of the parties' briefing.

In determining whether a party had a full and fair opportunity to litigate an issue, the Michigan Supreme Court has instructed that a court should look to the factors set forth in §§ 28–29 of the Restatement (Second) of Judgments, which address exceptions to the general rule of issue preclusion and issue preclusion in subsequent litigation with others. Monat, 678 N.W.2d at 845 n.2. These factors indicate that T&T had a full and fair opportunity to litigate the issue concerning payments under the final judgment, and they do not support re-litigation of this issue.

For instance, § 28 provides that re-litigation of an issue in a subsequent action should be permitted if the "party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." Restatement (Second) of Judgments § 28(1). T&T could—and did—seek review of the state-court decision by filing a motion for reconsideration and appealing to the Michigan Court of Appeals and the Michigan Supreme Court. In addition, § 28 states that re-litigation is permitted if "[t]he issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." Id. § 28(2). None of these circumstances applies here. The claims in the state courts and this case are substantially related, and there is no intervening legal change or inequitable administration of the laws. Further, none of the circumstances in § 29 that justify affording a party the opportunity to relitigate an issue is present here. See Monat, 678 N.W.2d at 845 n.2 (describing circumstances). T&T had notice of the state-court proceedings and an opportunity to present its argument to the state court through briefing and oral argument.

T&T asserts, however, that it did not have a full and fair opportunity to litigate the issue of whether one of the three conditions in the final judgment had occurred because the Wayne County Circuit Court did not conduct an evidentiary hearing, and the state appellate courts denied review without explanation. Resp. at 12. But "a full and fair opportunity to litigate does not require any 'single model of procedural fairness, let alone a particular form of procedure.'" Herrera v. Churchill McGee, LLC, 680 F.3d 539, 547 (6th Cir. 2012) (quoting Kremer, 456 U.S. at 483). A full and fair opportunity to litigate a particular issue includes the question of "whether without fault of his own the [party against whom collateral estoppel is to be invoked] was deprived of crucial evidence or witnesses in the first litigation." Blonder-Tongue Laby's v. Univ. of Ill. Found., 402 U.S. 313, 333 (1971). But this does not mandate that a court hold an evidentiary

13

hearing or trial or suggest that, in the absence of an evidentiary hearing or trial, collateral estoppel does not apply. T&T points to nothing in Michigan or federal law that would have required an evidentiary hearing.

Therefore, the City is entitled to dismissal of T&T's takings claim to the extent the claim is based on the City's termination of payments.

### III. CONCLUSION

For the foregoing reasons, the Court grants the City's motion to dismiss (Dkt. 5).

SO ORDERED.

Dated: March 1, 2022　　　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　United States District Judge